EXHIBIT

A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | | |
|---|---|---|
| **JEREMY SMITH, individually and on behalf of a class of similarly situated persons,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION FILE NO. 16-21146-Civ-UU** |
| **v.** | ) ) ) | **CLASS ACTION** |
| **U.S. BANK, N.A.,** | ) ) | **JURY TRIAL** |
| **Defendant.** | ) | |

---

## EXPERT REPORT OF KAREN FORTUNE

### Dated November 1, 2016

# Table of Contents

1   Professional Background ........................................................................................................... 1

2   Responsibilities in this Matter ................................................................................................. 1

3   Summary of Findings .............................................................................................................. 2

4   Post Payment Interest Calculations ......................................................................................... 2

    4.1   US Bank Post Payment Interest Calculation ................................................................. 3

    4.2   Per Diem Interest – Year Conventions ......................................................................... 5

    4.3   Date Post Payment Interest Begins ............................................................................... 6

5   Other Considerations ............................................................................................................... 6

6   Summary of Results ................................................................................................................. 7

7   Compensation .......................................................................................................................... 7

8   Restriction ............................................................................................................................... 7

# 1   Professional Background

I am a partner at IAG Forensics & Valuation ("IAG"), a CPA firm in Atlanta, Georgia, that provides forensic accounting, fraud investigation and business valuation services.  I received my Bachelor of Science in Accounting in 1990 and my Master of Accounting in 1992 from the University of Florida, Fisher School of Accounting.   I am a Certified Public Accountant ("CPA") licensed in the state of Georgia, a member of the American Institute of Certified Public Accountants ("AICPA") and the Georgia Society of CPAs ("GSCPA").  In addition, I am Certified in Financial Forensics ("CFF") by the AICPA and a Chartered Global Management Accountant ("CGMA").  I have served on the Forensic and Valuation Services Advisory Committee for the GSCPA and chaired the GSCPA's 2014 and 2016 Fraud and Forensic Accounting Conference.  My forensic practice has focused primarily on matters involving complex commercial damages, corporate internal investigations, funds tracing, fraud and alter ego analyses and financial analyses.  In the course of my career, as an auditor and forensic accountant, I have gained knowledge, experience and expertise in performing interest calculations.

I have testified as an expert witness in matters brought within Superior Courts of the State of Georgia and the United States District Courts for the Eastern District of Virginia, Southern District of New York, and Northern District of Georgia (Atlanta Division).  I have consistently equaled or exceeded the continuing professional education ("CPE") requirements for my designations.  My CV is attached hereto as Appendix 1, further documenting my experience and testimony.

# 2   Responsibilities in this Matter

I was retained by Counsel for Jeremy Smith and other similarly situated persons ("Class Members") to perform the following:

(1) Examine relevant electronic records, pleadings, deposition transcripts and correspondence from U.S. Bank, N.A. ("US Bank" or "Defendant") in this matter.

(2) Determine whether borrowers identified within the mortgagee loan data files that US Bank produced ("Mortgagee Data") were charged "Post Payment Interest," i.e., interest for a period of time after they paid the full outstanding balance due on their loan.

(3) Create a model capable of (a) determining which borrowers identified in the Mortgagee Data paid Post-Payment Interest and (b) determining the amount of Post Payment Interest that each such borrower paid.

The services I performed did not constitute an audit under GAAS, the purpose of which is to express an opinion on financial statements.  Rather, the services provided in this matter were performed in accordance with the Code of Professional Conduct and Statements on Standards for Consulting Services established by the AICPA and my opinions are expressed to a reasonable degree of accounting certainty.

I, and staff working under my supervision and direction, have received and reviewed documents pertaining to the case, including the list of documents attached as Appendix 2, which are those generally and customarily relied upon in the type of forensic accounting engagement at issue in the

1

matter.  I have not performed any procedures to determine the accuracy of the records provided by US Bank since it is my expectation and understanding that such a bank is required to institute controls to maintain true and accurate records.  In fact, one of US Bank's 30(b)(6) witnesses, Ms. Patricia Ludka, confirmed that she "under[stood] that the mortgagee data was pulled from U.S. Bank's business records" and "U.S. Bank has the responsibility to maintain complete and accurate business records on its loans."[1]

My work is ongoing and additional relevant information may be learned or made available. Accordingly, I reserve the right to revise and/or supplement my analyses and opinions to the extent additional relevant information is provided.  Any differences in the amounts calculated or referred to in the supporting documentation are due to rounding.

## 3   Summary of Findings

Based on my review of the records, documents, testimony and correspondence provided:

1. It is possible to identify which borrowers included within the Mortgagee Data paid Post Payment Interest and in what amounts.  Refer to Section 4.

2. I have designed a model capable of (a) identifying borrowers within the Mortgagee Data who paid Post Payment Interest and (b) performing calculations to determine the respective amounts of Post Payment Interest paid.  Refer to Section 4.1.

3. The model is based upon US Bank's representations and testimony; however, I am able to account for other variations, such as the day upon which the Post Payment Interest calculation begins.  Refer to Sections 4.2 – 4.3 and 5.

4. I have provided Knowledge Integrity Incorporated ("KII") information so that it can apply the model I created to the Mortgagee Data.  I have reviewed KII's work and the results thereof, and have concluded that KII properly applied the model to the Mortgagee Data and the results KII provided are reliable. Refer to Section 6.

5. Using the model I created, it is possible to determine which borrowers identified within the Mortgagee Data paid Post Payment Interest and the amount of such interest each borrower paid. In fact, that analysis has already been performed, and demonstrates that there are 148,204 borrowers that paid Post Payment Interest in the collective amount of $30,486,865.12.  Refer to Section 6.

## 4   Post Payment Interest Calculations

US BANK produced electronic records to Plaintiffs' counsel which included the following fields:

1. ID

---

[1] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 11:24-12:5

2. PAYMENT_IN_FULL_DATE ("Payoff Date")
3. PROPERTY_ALPHA_STATE_CODE
4. LOAN_CLOSING_DATE
5. INTEREST_RATE
6. NEXT_PAYMENT_DUE_DATE
7. LOAN_MATURITY_DATE (YYMM)
8. ARM_PLAN_ID
9. SERVICING_AGENT_ID
10. PMT_TOTAL_AMOUNT
11. PMT_INTEREST_AMOUNT ("Interest Paid")
12. PMT_TRANSACTION_DATE
13. PMT_PRINCIPAL_AMOUNT

US Bank has represented that, using the data contained in these fields, it is possible to determine which borrowers paid Post Payment Interest and the amount of such interest that each borrower paid.[2] According to counsel to US Bank, the data already excludes loans collateralized by property located in Illinois and loans paid off on the first business day of the month.[3]

I was provided a sample of approximately 200 records from the database US Bank produced in order to design a model capable of determining which borrowers paid Post Payment Interest and the amount of such interest each borrower paid. The following details the various components of the model.

## 4.1    US Bank Post Payment Interest Calculation

I have reviewed the 30(b)(6) deposition testimony of Ms. Renee Mueller, a 25-year US Bank employee who has served as the "Vice-president investor reporting, payoffs and assumptions" for 17 years.[4] Her responsibilities include, among other things, managing the "department that generates payoff statements on behalf of borrowers or third-party requests."[5]

During the 30(b)(6) deposition, Ms. Mueller confirmed "it was U.S. Bank's practice to collect a full month interest during the month in which a borrower prepaid a loan and paid it off."[6] She also confirmed that "when a loan is prepaid because the borrower paid in advance, when the borrower pays off the loan altogether, he or she would still be charged a full month's interest"[7] and "other than borrowers in Illinois or those that closed after January 20th of 2015, it's fair to understand that all borrowers of FHA-insured loans paid a full month's interest."[8]

She further testified that "[if] today is October 24th…In order to calculate the post-payment interest, I would have to first look if the loan were paying off today, I would have to compute 23 days of interest

---

[2] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 33:13-35:6; Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 13:5-22:5
[3] Email from Eric Sherman to Steven J. Rosenwasser, dated September 23, 2016 7:24 PM
[4] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 8:2-21
[5] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 8:11-13
[6] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 36:19-24
[7] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 38:25-39:4
[8] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 39:5-9

3

using the formula[9] and then take the full month's interest and subtract the difference of interest through today and that would be the difference."[10]  Ms. Mueller confirmed that this post-payment calculation "would be true for all FHA loans."[11]

I have also reviewed the 30(b)(6) testimony of Ms. Patricia Ludka, a 37-year US Bank employee who has served as the "Vice-president of mortgage servicing."[12]  Her responsibilities during her tenure with US Bank have included, among other things, serving as "the liaison with the…vendor" "that maintains data relating to FHA-insured loans."[13]

Ms. Ludka's testimony was consistent with Ms. Mueller's regarding the calculation of Post Payment Interest.  She affirmed that "U.S. Bank calculates a full month's interest for all FHA loans by taking the payment principal amount, multiplying it by the interest rate, and dividing it by 12."[14]  Walking through an example from the Mortgagee Data, she further confirmed that "that's how you would do it for all of these FHA-insured loans."[15] She further confirmed that "if you want to calculate the per diem for all the FHA-insured loans, what you do is you take the payment principal amount, multiply it by the interest rate and divide it by 365."[16]  And, if the Payoff Date was November 27th, "if you want to figure out the per diem or the interest that was accrued up to the day of payoff for that loan, you would take the per diem times 26 since there's 26 days from November 1st up to November 27th."[17]  She further confirmed that "to figure out the post-payment interest, what you would do is take the full month's interest and subtract out the per diem…for all these FHA-insured loans."[18]

Therefore, relying upon representations made by US Bank and its 30(b)(6) witnesses, as well as my knowledge, experience and expertise, I have computed Post Payment Interest by first calculating the Monthly Interest collected in the month of payoff as follows:

$$\text{"Monthly Interest"} = (\text{PMT\_PRINCIPAL\_AMOUNT} \times \text{INTEREST\_RATE})/12 \text{ months}^{19}$$

I then calculate Per Diem Interest using a 365-day year as follows:

$$\text{"Per Diem Interest"} = (\text{PMT\_PRINCIPAL\_AMOUNT} \times \text{INTEREST\_RATE})/365^{20}$$

Third, according to Ms. Mueller, to calculate the Per Diem Interest owed at payoff, "[i]t's the unpaid principal balance, multiplied by the annual interest rate, divided by 365, multiplied by the number of

---

[9] Ms. Mueller testified that Per Diem Interest owed was calculated as "unpaid principal balance, multiplied by the annual interest rate, divided by 365, multiplied by the number of days of interest up to, but not including the date of receipt." Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 33:13-19

[10] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 34:12-21

[11] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 34:12-35:6

[12] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 5:20-25

[13] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 7:6-12

[14] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 18:14-19

[15] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 19:14-23

[16] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 20:2-7

[17] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 20:14-21:1

[18] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 21:15-22:5

[19] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 35:18-21; Email from Eric Sherman to Steven J. Rosenwasser, dated September 29, 2016 4:57 PM

[20] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 33:13-34:4; Email string from Eric Sherman to Steven J. Rosenwasser, dated September 26, 2016 10:59 AM

days of interest up to, but not including the date of receipt."[21] This testimony is consistent with my knowledge and experience as to how Per Diem Interest can be calculated.  Ms. Mueller further testified that "FHA, Ginnie Mae loans [use] a 365-day computation" and this is "true for all FHA loans."[22]

According to Ms. Ludka's testimony, the PAYMENT_IN_FULL_DATE "is the date that that record or loan was paid in full" and "for purposes of calculating interest" one would use "the payment in full date."[23]  Consistent with US Bank's 30(b)(6) witnesses testimony, I calculated Per Diem Interest owed to the day before the PAYMENT_IN_FULL_DATE.

Fourth, consistent with Ms. Mueller's and Ms. Ludka's testimony[24] and my knowledge and experience, I then calculate Post Payment Interest as the difference between (a) Monthly Interest and (b) Per Diem Interest incurred to the day before the Payoff Date.

The model I have designed calculates Post Payment Interest as described above.  And, using this model, it is possible to determine which borrowers paid Post Payment Interest and the amount thereof.  Indeed, KII has applied this model to the Mortgagee Data and created an output identifying each of the borrowers who paid Post Payment Interest and the amount of Post Payment Interest paid.  I have reviewed that output and concluded that it properly applies my model.  I understand that KII has attached that output to its report.

## 4.2   Per Diem Interest – Year Conventions

US Bank stated that it calculated Per Diem Interest based on a 365-day convention[25]; however, I am able to calculate Per Diem Interest for all loans in the Mortgagee Data using a 360-day year, 365-day year and the actual number of days in a year (i.e., if the year is a leap year, there would be 366 days in that year).  In order to do this, I would only be required to change the denominator to 360 or actual days in the year.

As demonstrated above, I am also able to calculate Per Diem Interest for all loans in the mortgagee data based on the relative number of days in a month (e.g., Monthly Interest of $300 would be $10 per day in a 30-day month, but $10.71 in February in a non-leap year).  To make this change, I would only be required to change the denominator to twelve (12) months and then divide by the number of days in the respective month.

Making any of the changes referenced in this Section 4.2 would not affect my ability to determine which borrowers paid Post Payment Interest and the amount thereof.

---

[21] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 33:13-19
[22] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 34:1-4
[23] Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 14:17-15:14
[24] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 34:15-21; Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 21:15-22:5
[25] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 33:13-34:4; Email string from Eric Sherman to Steven J. Rosenwasser, dated September 26, 2016 10:59 AM

### 4.3    Date Post Payment Interest Begins

As stated above and consistent with US Bank's 30(b)(6) testimony, I calculated Post Payment Interest as the difference between (a) Monthly Interest and (b) Per Diem Interest incurred up to, but not including the Payoff Date for all loans in the Mortgagee Data.  The result of this is that Post Payment Interest began on the Payoff Date.

I am also able to calculate Post Payment Interest for all loans in the Mortgagee Data beginning the day after the Payoff Date.  This would decrease Post Payment Interest for the loans referenced in the Mortgagee Data.

Whether Post Payment Interest is calculated beginning on the day of or the day after the Payoff Date would not change my opinion that I can determine which borrowers paid Post Payment Interest and the amount of Post Payment Interest paid.

## 5    Other Considerations

For purposes of these calculations, and to determine which borrowers in the Mortgagee Data paid Post Payment Interest, I had KII include in their schedules only the following borrowers from the Mortgagee Data:

1.  Borrowers with a blank "SERVICING_AGENT_ID" field indicating US Bank serviced the loan.

Based on the testimony of Ms. Mueller and Ms. Ludka as to the determination and calculation of Post Payment Interest and the applicability to all FHA loans, as described above,[26] I have not adjusted for instances where the Interest Paid was less than Monthly Interest by greater than $1.00[27] or where Interest Paid exceeded Monthly Interest (or multiples of Monthly Interest) by greater than $0.75.[28]

---

[26] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 33:13-35:6, 36:19-24; Deposition of Patricia A. Ludka, US Bank 30(b)(6) witness, dated October 28, 2016, p. 18:14-22:5

[27] 30(b)(6) witness Renee Mueller testified that when "U.S. Bank's data shows that the interest paid at payoff is less than $1 than the monthly interest," the difference was likely "rounding differences." - Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 37:6-12; As to larger differences due to a zero or negative Interest Paid at payoff, Ms. Mueller testified that if a loan was paid in advance and then the borrower paid the loan off altogether, it "wouldn't be highly unusual to see in our data" "that the interest at payoff was zero or negative." - Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 38:7-24; Further, according to Ms. Mueller, "when a loan is prepaid because the borrower paid in advance, when the borrower pays off the loan altogether, he or she would still be charged a full month's interest." - Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 38:25-39:4; In the Mortgagee Data, there were 112 instances where Monthly Interest exceeded Interest Paid by more than $1 and the Interest Paid was greater than zero and there were 15 instances where Monthly Interest exceeded Interest Paid, the Interest Paid was less than or equal to zero and the loan was not prepaid.

[28] 30(b)(6) witness Ms. Mueller testified that "if the interest payoff was more than $1 than the monthly interest," "I could almost say that that could potentially be rounding differences, as well…That would be highly unusual, unless you are talking big interest rates, delinquent loans and a high UPB." - Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 37:13-24; In the Mortgagee Data, there were 162 instances where Interest Paid exceeded Monthly Interest (or multiple months of Monthly Interest) by greater than $0.75.

However, if appropriate, I can easily do so[29] based on Ms. Mueller's testimony that "you can go back and look at the payoff statements and figure out whether post-payment interest was paid."[30]

Further adjustments (exclusions or inclusions), as necessary, can be easily made to the model.

## 6    Summary of Results

I have reviewed the output created by KII to determine, among other things, (a) whether KII properly applied my model; (b) whether the output from my model is consistent with US Bank's representations and my opinion of the appropriate interest calculations in this case; and (c) whether applying my model allows me to determine across all loans in the Mortgagee Data whether each borrower paid Post Payment Interest and the amount thereof.  Based on that review, I have concluded that KII properly applied my formulas, and that the output is consistent with US Bank's representations and my opinion as to the appropriate interest calculations in this case.  I have further concluded that there are 148,204 borrowers within the Mortgagee Data that paid Post Payment Interest in the collective amount of $30,486,865.12.

Based on my review of KII's output, it is possible to identify each borrower in the Mortgagee Data (by specific information such as borrower name, address and loan number) who paid Post Payment Interest and the amount that borrower paid.

## 7    Compensation

Fees for services in this matter have been charged at an hourly rate of $80 - $395 per hour for time incurred plus out-of-pocket expenses.  These fees are not contingent on the substance of my opinions or the outcome of this matter.  Personnel including my Senior Manager and Staff were instrumental in assisting me with the compilation of the data contained within this report.  All work done for this report was performed utilizing due care and under my direct supervision.

## 8    Restriction

This report summarizes my initial analysis, observations, conclusions and opinions based upon the work I have performed to date.  My work is ongoing and additional information may be learned.  Accordingly, I reserve the right to amend or supplement my report and/or findings should additional relevant information be provided.  The attached exhibits, schedules and accompanying notes to the schedules are an integral part of this report.

---

[29] For example, if those borrowers who had not prepaid their loans and their Monthly Interest exceeded Interest Paid by greater than $1 or borrowers whose Interest Paid exceeded Monthly Interest (or multiples of Monthly Interest) by greater than $0.75 should be excluded, that can easily be accomplished, and would not change my opinions in this report.  Of the 149,283 records, there are only 289 (or 0.1936%) of such borrowers that could be examined further, if required.

[30] Deposition of Renee Mueller, US Bank 30(b)(6) witness, dated October 24, 2016, p. 38:3-6

The procedures were performed solely for the information and assistance of Counsel and the Court with respect to this matter.  This report is not to be reproduced, distributed, disclosed or used for any other purpose without prior written consent of IAG.

This report is not intended for general circulation or publication.

_____

Karen Fortune, CPA/CFF, CGMA, MAcc



# Appendix 1

**CURRICULUM VITAE**
**KAREN B. FORTUNE**
Certified Public Accountant
Certified in Financial Forensics
Chartered Global Management Accountant
Master of Accountancy

## EDUCATION

University of Florida, Fisher School of Accounting
Master of Accountancy, 1992
Bachelor of Science, Accounting, 1990

## PROFESSIONAL EXPERIENCE

Ms. Fortune serves as a Partner in IAG Forensics' forensic accounting and litigation services practice. Karen has over twenty years experience, comprised of both public and private practice, having spent several years in public accounting and serving as a CFO for a biotechnology firm. She possesses extensive experience in financial reporting, auditing of both public and private companies, addressing complex accounting issues, evaluating and designing internal controls, and performing corporate investigations.

She assists attorneys on cases involving corporate internal investigations, fraud allegations and complex financial analyses. Additionally, she specializes in matters involving M&A disputes and the application of Generally Accepted Auditing Standards (GAAS). Karen has testified as an expert witness and has provided assistance to attorneys on several aspects of a case from the complaint stage through trial. Representative assignments that Ms. Fortune has worked on include:

- Complex financial damages

- Matters involving the application of GAAP and GAAS

- Securities litigation

- Corporate internal investigations on behalf of Special Counsel, Boards of Directors, Audit Committees and/or management teams (including financial statement fraud and improper use of funds)

- White Collar Crime and fraud investigations

- Investigations on behalf of financial institutions involving loan losses due to impairment or fraud

- M&A litigation (purchase price disputes)

*Karen B. Fortune, CPA/CFF, CGMA, MAcc*
*Page 2*

## SELECT EXPERIENCE

- Performed data analysis for bankruptcy, REO and foreclosure back-office company in a dispute with its major customer over fees charged. Matter involved determination of types of services rendered, expenses incurred and appropriate charges. Utilized SQL queries, IDEA and Access database programs to collect data and recalculate proper fees (comparing to fees charged).

- Investigated potential claims against global bankruptcy backoffice processor for major credit card companies regarding charges and late fees incurred as a result of a internal system error. Work included massive data extraction and analysis, providing management with a report of findings, which was used to avoid being sued by credit card company customer.

- Performed data analysis for plaintiffs' class alleging overcharges on debit card-related transactions processed by global petroleum retailer. Provided calculations for counsel resulting in successful resolution of the matter.

- Investigated damage claims resulting from catastrophic event involving major transportation and global engineering firms. Assisted defense counsel in determining excessive claims for purposes of mediation.

- Performed analysis of damages asserted by name-brand pharmaceutical company against generic pharmaceutical company. Analyzed pharmaceutical sales trends, pricing strategies, competition to determine various other causal relationships not considered by the plaintiff.

- Performed data analysis and potential damage claims calculations for major credit reporting entity. Determined length of time that class of individuals who had declared bankruptcy continued to have poor credit notifications beyond statutory periods.

- Performed analysis of damages asserted by small air carrier against major air carrier relating to its removal from the military transport team. Assisted defense counsel for major air carrier in disputing plaintiff's linear regression and lost profits assertions.

- Performed financial analysis and review of accounting records to determine royalties due under inventor agreement with research organization.

- Assisted counsel in calculating damages related to cable company's breach of contract. Allegations included breach of exclusivity rights to provide service to certain customers. Utilized data analysis to determine wrongful cable connections by defendant, which circumvented exclusivity arrangement of plaintiff.



*Karen B. Fortune, CPA/CFF, CGMA, MAcc*
*Page 3*

- Assisted defense counsel in white collar crime matter by analyzing transactions included in federal government's bank, wire and securities fraud indictment counts against mortgage originator/broker. Provided expert witness testimony on transactions and their financial impact upon the lending institution.

- Analyzed audit working papers in several matters asserting accounting malpractice against independent accountants of pension plans invested in Madoff-related feeder funds. Assisted counsel in mediation between investors and audit firm representatives and insurers.

- Performed investigation for audit committee of mortgage-REIT's accounting for portfolio impairment. REIT portfolio consisted of loans to prime, subprime and ALT-A lenders and real estate developers.

- Investigated alleged bank fraud of bank president, performing funds tracing through multiple customer loan, cash and credit accounts on behalf of bank. Assisted FDIC in concurrent investigation by providing documentation and findings which led to successful prosecution.

- Performed investigation of alleged bank fraud involving loan syndication. Participating banks asserted lead bank withheld certain facts from syndicated leading to loan losses.

- Assisted counsel in defense of CEO and CFO of publicly-traded cable company accused of securities fraud and financial statement misstatements.

- Assisted attorneys in analysis of public filings and available documentation to develop complaint in multi-billion dollar class action suit alleging fraudulent financial reporting of revenues. Matter settled for $2.5 billion.

## PUBLICATIONS

"Internal Investigations – How-and when-to take matters into your own hands" November 2007, Smart Business Atlanta Magazine

"Let the Buyer (and the Seller) Beware" January 2009, Business & Finance Section of the Atlanta Bar Association – 4th Annual Professionalism CLE Seminar

"The EBITDA Enigma" January 2009, Business & Finance Section of the Atlanta Bar Association – 4th Annual Professionalism CLE Seminar

"Rebuilding Haiti: Beware of the FCPA" May 2010, BNA, Inc. – White Collar Crime Report and Law 360 – The Newswire for Business Lawyers, co-authored with Catherine Salinas, Esq.



*Karen B. Fortune, CPA/CFF, CGMA, MAcc*
*Page 4*

"FCPA Compliance: Tone at the Top, Train at the Bottom" October 2010, Law 360 – The Newswire for Business Lawyers, co-authored with Catherine Salinas, Esq.

## PROFESSIONAL TEACHING EXPERIENCE

**Identifying and Addressing Fraud Risks in the Current Real Estate Climate** – Georgia Society of CPAs Real Estate Conference (June 2010)

**Effective Use of Financial Experts in Contract Disputes** – Institute of Continuing Legal Education in Georgia (State Bar of Georgia) Contract Litigation Conference (August 2010)

**Audits of Employee Benefit Plans – Frequent Issues in Malpractice Matters** – Habif, Arogeti & Wynne P.C.'s audit department (April 2011)

**Effective Use of Experts in Fraud Matters** - Institute of Continuing Legal Education in Georgia (State Bar of Georgia) Expert Testimony Conference (October 2012)

**Guest Lecturer at Clayton State University** (March 2012, January 2013) – Forensic Accounting Course

**Guest Lecturer at Southern Polytechnic Institute** (January 2013) – Auditing Course; (November 2013) – Forensic Accounting Course

**When CEOs and CFOs Run Amok – Top Fraud Prevention Strategies for GCs** – Daily Report In-House Counsel CLE Seminar Series (January 2013)

**The Risks and Rewards of a Forensic Accounting Practice** – DeKalb and Gwinnett Chapters of GSCPA (February and March 2013)

**Audit Malpractice Issues – Impact of Management Fraud on Auditors** – IIA CSRA  CPE Conference (June 2013); AAA-CPA Annual Event (November 2015)

**Before the Valuation – Cleaning Up Financial Statement When Fraud Has Occurred** – NACVA State of Georgia Annual Meeting (October 2013)

**Guest Lecturer at Georgia Gwinnett College** (March 2014) - Auditing Course

**Guest Lecturer at Kennesaw State University's CPE for CPAs Program** (November 2014, November 2015) – Fraud Prevention and Detection Training for CPAs



*Karen B. Fortune, CPA/CFF, CGMA, MAcc*
*Page 5*

**Guest Lecturer at Georgia State University** (April 2015) – Forensic Accounting/MBA Course

**Governmental Fraud, Waste & Abuse: A Tale of Two Cities** (December 2015) – GSCPA Annual Governmental A&A Conference

**Guest Lecturer at University of Georgia** (April 2016) – Fraud and Forensic Accounting/MAcc courses

**EXPERT TESTIMONY EXPERIENCE**

**Marvellous Items, Inc. et al v. nCrowd, Inc. and Brian Conley**
United States District Court for the Northern District of Georgia (Atlanta Division)
Deposition Testimony – **October 2016**

**Laura Harvey, et al v. 55 Pharr Road Condominium Association, Inc. et al**
Superior Court of Gwinnett County
Deposition Testimony- **September 2016**

**The Bimeco Group, Inc. v. ICU Medical, Inc.**
United States District Court for the Northern District of Georgia (Newnan Division)
Deposition Testimony – **June 2016**

**Triton Management Group, Inc. and Three Rivers Investment, Inc. d/b/a Always Money v. ApproveData, Inc.**
In the American Arbitration Association
Deposition Testimony – **February 2016**
Arbitration Testimony – **February 2016**

**SCCMWL Restaurants, LLC, Pepperoni's Parke Bridge, LLC, et al v. William Klett et al**
State Court of Forsyth County
Deposition Testimony – **February 2016**

**Foster V. Yancey, III v. Foster V. Yancey, Jr., IN RE: Stone Mill Communities, LLC**
Private Arbitration
Arbitration Testimony – **January 2016**

**Martha Westmoreland, et al v. FSC Securities Corporation, et al**
Before the Arbitral Tribunals of the Financial Industry Regulatory Authority
Arbitration Testimony – **July 2015**



*Karen B. Fortune, CPA/CFF, CGMA, MAcc*
*Page 6*

**In the Matter of the Estate of James Furman Bisher, Sr.**
Probate Court of Fayette County, State of Georgia
Trial Testimony – **June 2015**

**Bamberger Rosenheim, Ltd. (Israel) v. OA Development, Inc. (United States)**
International Court of Arbitration, The International Chamber of Commerce
Deposition Testimony – **May 2015**
Arbitration Testimony – **July 2015**

**State v. Sonequa James**
DeKalb County Grand Jury Testimony – **February 2015**

**Melanie Millner v. Guy Wesley Millner, Jr.**
Superior Court of Fulton County
Hearing Testimony – **March 2014**

**Rodney S. Allen and Robin D. Allen v. Jason J. Watson**
Superior Court of Forsyth County
Hearing Testimony – **March 2014**

**RL BB ACQ II-GA Harp, LLC v. John E. Ramsey, III, et al**
Superior Court of Fulton County
Hearing Testimony – **February 2014**

**Susan Kolb, MD, et. al. v. Saint Joseph's Health System, Inc.**
State Court for the County of Fulton, State of Georgia
Deposition Testimony – **November 2013**

**The State vs. Crawford Lewis, Patricia Pope, aka: Patricia Reid and Anthony Vincent Pope**
DeKalb County Superior Court D0201091-06
Trial Testimony – **November 2013**

**Pinnacle at Eagles' Pointe, LLC v. Dr. Tarsem Gupta d/b/a Atlanta Pulmonary Care and Tarsem Gupta, M.D. and TSM Group, Inc. v. Pinnacle at Eagles' Pointe, LLC and M. Shailendra**
HMA Docket #13-171274 Arbitration
Deposition Testimony – **August 2013**
Arbitration Testimony – **September 2013**

**Akbas v. Cash 4 Gold, et al**
Superior Court of Fulton County
Trial Testimony – **May 2013**



*Karen B. Fortune, CPA/CFF, CGMA, MAcc*
*Page 7*

**D.E.W. Plumbing, Inc., et al v. Domestic Mortgage, Inc., et al**
United States District Court for the Northern District of Georgia (Atlanta Division)
Deposition Testimony – **December 2012**
Trial Testimony – **May 2013**

**Star Life Productions, Inc. v. Georgia World Congress Center Authority, and the State of Georgia**
State Court of Fulton County, State of Georgia
Deposition Testimony – **April 2013**

**Stephen Barnett v. Earthwise Industries, Inc., Andrew Fullard, Adena Fullard and Jane Hix**
Superior Court of Gwinnett County
Deposition Testimony – **March 2013**
Trial Testimony – **August 2014**

**Akbas v. Serbest**
Superior Court of Fulton County – Family Division
Hearing Testimony – **November 2012**
Trial Testimony – **April 2013, May 2013 (continued)**

**Sahlu v. Sahlu**
Superior Court of Gwinnett County
Hearing testimony – **April 2012** (Lawrenceville, Georgia)

**Hospital Authority of Rockdale County v. Goldman Sachs Capital Partners V Fund, L.P., et al**
United States District Court for the Southern District of New York
Deposition testimony – **February 2012** (Atlanta, Georgia)

**Nash v. Nash**
Superior Court of Fulton County
Hearing testimony – **February 2012** (Atlanta, Georgia)

**Middle Georgia Management Services, Inc. v. Christian Kelly Thigpen & Company, LLC and Ralph s. Kelly, Jr.**
Superior Court of Laurens County, State of Georgia
Deposition testimony – **January 2012** (Atlanta, Georgia)

**United States of America v. Lee Bentley Farkas**
United States District Court for the Eastern District of Virginia (Alexandria)
Trial Testimony – **April 2011** (Alexandria, Virginia)



*Karen B. Fortune, CPA/CFF, CGMA, MAcc*
*Page 8*

**Advanced Telemedia, LLC v. Charter Communications, Inc.**
United States District Court for the Northern District of Georgia, Atlanta Division
Trial testimony – **July 2008** (Rome, Georgia)
Deposition testimony – **August 2006** (Atlanta, Georgia)

**The University of Georgia Research Foundation, Inc. v. KB Visions, Inc.**
Superior Court of Clarke County, State of Georgia
Hearing testimony – **April 2009** (Athens, Georgia)
Deposition testimony – **November 2005** (Atlanta, Georgia)

## PROFESSIONAL AFFILIATIONS

American Institute of Certified Public Accountants

Georgia Society of Certified Public Accountants

Georgia Society of Certified Public Accountants – Forensic and Valuation Services Section Leadership Committee (**Chair of Fraud Prevention and Detection Division** January 2010 – July 2013; **Vice Chair of FPDD** July 2013 – December 2013; **Chair of Fraud & Forensic Accounting Conference** 2014; **Member of Fraud & Forensic Advisory Committee** August 2014 – July 2015)

National Litigation Consultants Review (NACVA) editorial board (2011 – 2016)

Georgia Association of Women Lawyers (Non-Lawyer member 2004 – present)

American Bar Association (Non-Lawyer Affiliate Member)

Metro Atlanta Chamber of Commerce – Biosciences Leadership Council member (2010 – 2011); Medical Devices Committee member  (2010 – 2011)



Jeremy Smith, et al v. U.S. Bank, N.A.
USDC, Southern District of Florida, Miami Div.
Civil Action File No. 1:16-CV-21146-UU

Appendix 2

| No. | Type | Bates Number | | Exhibit # | Entity (s) | Accounts | | Period Ending | Description | Year |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Beginning | Ending | | | Name | Reference | | | |
| 1 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | September | Email - Steven Rossenwasser to Chris Shaheen chain re: Data production information dated 9/26/2016 | 2016 |
| 2 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Steven Rossenwasser to Eric Sherman, Chris Shaheen chain re: Data production information dated 10/3/2016 | 2016 |
| 3 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Steven Rossenwasser to Eric Sherman, Chris Shaheen chain re: Data production information dated 10/5/2016 | 2016 |
| 4 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | September | Email - Eric Sherman to Steven Rossenwasser re: Plaintiff coding aid for loan data dated 9/23/2016 | 2016 |
| 5 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | September | Email - Steven Rossenwasser to Chris Shaheen re: Timely data questions dated 9/26/2016 | 2016 |
| 6 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | September | Email - Eric Dorsey to Steven Rossenwasser re: Timely data additional data production dated 9/30/2016 | 2016 |
| 7 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Steven Rossenwasser to Eric Shaheen re: US Bank data questions dated 10/3/2016 | 2016 |
| 8 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Eric Sherman to Steven Rossenwasser re: Loan data dated 10/6/2016 | 2016 |
| 9 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Steven Rossenwasser to Eric Sherman re: Loan data dated 10/6/2016 | 2016 |
| 10 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Steven Rossenwasser to Eric Sherman re: Loan data production data issues dated 10/14/2016 | 2016 |
| 11 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Chris Shaheen to Steven Rossenwasser re: Loan data production data issues dated 10/15/2016 | 2016 |
| 12 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Eric Sherman to Steven Rossenwasser re: Loan data production data issues dated 10/15/2016 | 2016 |
| 13 | Correspondence | - | - | - | Bondurant Mixson & Elmore / Dorsey & Whitney Law Firm | - | - | October | Email - Chris Shaheen to Steven Rossenwasser re: Data questions dated 10/20/2016 | 2016 |
| 14 | Correspondence | - | - | - | Knowledge Integrity Incorporated | - | - | October | Email - David Loshin to Karen Fortune re: USB totals from PPI spreadsheet dated 10/27/2016 | 2016 |
| 15 | Deposition | - | - | - | Amanda Ficher | Amanda Ficher | - | October | Deposition - 10/24/2016 | 2016 |
| 16 | Deposition Exhibit | - | - | 1 | Amanda Ficher | Amanda Ficher | - | October | Plaintiff's Fifth Amended Notice of Rule 30(b)(6) dated 10/14/2016 | 2016 |
| 17 | Deposition Exhibit | - | - | 2 | Amanda Ficher | Amanda Ficher | - | - | AICPA Audit and Accounting Guide - 2000.04 REV-2 Change 13 Chapter 2 | - |
| 18 | Deposition Exhibit | USB0000605 | USB0000608 | 3 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $80,331.31 Loan payoff statement as of 8/18/2016 | 2016 |
| 19 | Deposition Exhibit | USB0000609 | USB0000612 | 4 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $473.50 Loan payoff statement as of 8/18/2016 | 2016 |



Jeremy Smith, et al v. U.S. Bank, N.A.
USDC, Southern District of Florida, Miami Div.
Civil Action File No. 1:16-CV-21146-UU

Appendix 2

| No. | Type | Bates Number Beginning | Bates Number Ending | Exhibit # | Entity (s) | Accounts Name | Reference | Period Ending | Description | Year |
|---|---|---|---|---|---|---|---|---|---|---|
| 20 | Deposition Exhibit | USB0000613 | USB0000617 | 5 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $118,058.73 Loan payoff statement as of 8/18/2016 | 2016 |
| 21 | Deposition Exhibit | USB0000618 | USB0000621 | 6 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $80,331.31 Loan payoff statement as of 8/18/2016 | 2016 |
| 22 | Deposition Exhibit | USB0000622 | USB0000625 | 7 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $169,211.12 Loan payoff statement as of 8/29/2016 | 2016 |
| 23 | Deposition Exhibit | USB0000626 | USB0000629 | 8 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $46,484.64 Loan payoff statement as of 8/27/2016 | 2016 |
| 24 | Deposition Exhibit | USB0000630 | USB0000634 | 9 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $80,350.06 Loan payoff statement as of 8/18/2016 | 2016 |
| 25 | Deposition Exhibit | USB0000635 | USB0000638 | 10 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $169,211.12 Loan payoff statement as of 8/29/2016 | 2016 |
| 26 | Deposition Exhibit | USB0000639 | USB0000641 | 11 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $101,722.71 Loan payoff statement as of 8/17/2016 | 2016 |
| 27 | Deposition Exhibit | USB0000642 | USB0000646 | 12 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $169,211.12 Loan payoff statement as of 8/29/2016 | 2016 |
| 28 | Deposition Exhibit | USB0000647 | USB0000651 | 13 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $101,694.55 Loan payoff statement as of 8/22/2016 | 2016 |
| 29 | Deposition Exhibit | USB0000652 | USB0000657 | 14 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $80,331.31 Loan payoff statement as of 8/18/2016 | 2016 |
| 30 | Deposition Exhibit | USB0000658 | USB0000661 | 15 | Amanda Ficher | Amanda Ficher | Redacted | August | Redacted - $169,211.12 Loan payoff statement as of 8/29/2016 | 2016 |
| 31 | Deposition Exhibit | - | - | 16 | Amanda Ficher | Amanda Ficher | - | September | Defendant's Second Amended Answers to Plaintiff's First Interrogatories dated 9/14/2016 | 2016 |
| 32 | Deposition Exhibit | - | - | 17 | Amanda Ficher | Amanda Ficher | - | - | Blank Appendix 8(c) Request for payoff of tender of prepayment in full | - |
| 33 | Deposition Exhibit | - | - | 18 | Amanda Ficher | Amanda Ficher | - | October | Email - Chris Shaheen to Steven Rossenwasser re: HUD audits and document production dated 10/5/2016 | 2016 |
| 34 | Deposition | - | - | - | Renee Mueller | Renee Mueller | - | October | Deposition - 10/24/2016 | 2016 |
| 35 | Deposition Exhibit | USB0000523 | USB0000588 | 19 | Renee Mueller | Renee Mueller | - | June | US Bank Payoff and Assumption Policy and Procedures Chapter 4 - Payoffs amended 6/29/2016 | 2016 |
| 36 | Deposition Exhibit | - | - | 20 | Renee Mueller | Renee Mueller | - | - | Topic 3(a) and 15(a) documentation identification FHA-approved forms | - |
| 37 | Deposition Exhibit | USB0000024 | USB0000026 | 21 | Renee Mueller | Renee Mueller | Redacted / FHA case 093-5806789-703 / 546 Lindsay Anne Court, Plant City, FL 33563 | May | Redacted loan - $124,743 Note | |



Jeremy Smith, et al v. U.S. Bank, N.A.
USDC, Southern District of Florida, Miami Div.
Civil Action File No. 1:16-CV-21146-UU

Appendix 2

| No. | Type | Bates Number Beginning | Bates Number Ending | Exhibit # | Entity (s) | Accounts Name | Reference | Period Ending | Description | Year |
|---|---|---|---|---|---|---|---|---|---|---|
| 38 | Deposition Exhibit | - | - | 22 | Renee Mueller | Renee Mueller | - | January | Title 24 of Code of Federal Regulations effective 1/21/2015 | 2015 |
| 39 | Deposition | - | - | - | Patricia A. Ludka | Patricia A. Ludka | - | October | Deposition - 10/28/2016 | 2016 |
| 40 | Deposition Exhibit | - | - | 23 | Patricia A. Ludka | Patricia A. Ludka | - | October | Plaintiff's Fifth Amended Notice of Rule 30(b)(6) dated 10/14/2016 | 2016 |
| 41 | Deposition Exhibit | - | - | 24 | Patricia A. Ludka | Patricia A. Ludka | - | - | Report - FHA 100 lines data | 2009-2015 |
| 42 | Miscellaneous | USB0002974 | USB0002974 | - | US Bank | - | - | - | Payment Processing and Payment Research Policy and Procedures Chapter 39 - Payoffs; not dated | - |
| 43 | Pleading | - | - | - | Jeremy Smith v U.S. Bank, N.A. | - | 1:16-CV-21146-UU | March | Complaint filed 3/31/2016 | 2016 |
| 44 | Pleading | - | - | - | Jeremy Smith v U.S. Bank, N.A. | - | 1:16-CV-21146-UU | September | Omnibus Order filed 9/29/2016 | 2016 |
| 45 | Pleading | - | - | - | Jeremy Smith v U.S. Bank, N.A. | - | 1:16-CV-21146-UU | October | Plaintiff's Fifth Amended Notice of Rule 30(b)(6) dated 10/14/2016 | 2016 |
| 46 | Pleading Exhibit | - | - | 1 | Redacted | Redacted | Redacted | Redacted | Redacted - Note agreement - unsigned | - |
| 47 | Pleading Exhibit | - | - | 2 | - | - | - | - | Blank Appendix 8(C) - Pay-off inquiry form | - |
| 48 | Pleading Exhibit | - | - | 3 | - | - | - | - | Blank Appendix 8(C) - Chapter 5 Prepayment / Termination refunds and Distributive Shares agreement | - |
| 49 | Pleading Exhibit | - | - | 4 | Chicago Tribune | - | - | April | Story - "Interest costs don't end with payoff of FHA loan" dated 4/11/2004 | 2004 |
| 50 | Pleading Exhibit | - | - | 5 | www.thesimpledollar.com | - | - | January | Story - "The Very New Deal" How FHA Mortgages Are Changing for 2015" dated 1/9/2015 | 2015 |
| 51 | Pleading Exhibit | - | - | 6 | The Washington Post | - | - | September | Story - "FHA will stop lenders from charging extra interest when homeowners sell of refinance" dated 9/5/2014 | 2014 |
| 52 | Pleading Exhibit | - | - | 7 | Los Angeles Times | - | - | March | Story - "Controversial FHA payoff rule to end" dated 3/30/2014 | 2014 |
| 53 | Pleading Exhibit | - | - | 8 | Jeremy Smith / 545 Lindsay Anne Ct Plant City, FL 33563 | U.S. Bank | Redacted | March | Redacted - Payoff statement as of 3/5/2013 | 2013 |
| 54 | Samples | - | - | - | - | - | - | - | Excel - 20160923 Smith production date extract | - |
| 55 | Samples | - | - | - | - | - | - | - | Excel - Smith Metadata | - |
| 56 | Samples | - | - | - | - | - | - | - | Excel - 20161007 Smith Production data extract | - |



Jeremy Smith, et al v. U.S. Bank, N.A.
USDC, Southern District of Florida, Miami Div.
Civil Action File No. 1:16-CV-21146-UU

Appendix 2

| No. | Type | Bates Number Beginning | Bates Number Ending | Exhibit # | Entity (s) | Accounts Name | Reference | Period Ending | Description | Year |
|---|---|---|---|---|---|---|---|---|---|---|
| 57 | Samples | - | - | - | - | - | - | - | Excel - Remainder after dividing paid interest by monthly calculated | - |
| 58 | Samples | - | - | - | - | - | - | - | Excel - Interest paid greater than monthly not multiples | - |
| 59 | Samples | - | - | - | - | - | - | - | Excel - Interest paid less than monthly diff greater than One Cent | - |
| 60 | Samples | - | - | - | - | - | - | - | Excel - Loan ID number list | - |
| 61 | Samples | - | - | - | - | - | - | - | Excel - Loan ID complete list | - |
| 62 | Samples | - | - | - | - | - | - | - | Excel - Loan ID number list | - |
| 63 | Samples | - | - | - | - | - | - | - | Excel - Loan ID complete list | - |
| 64 | Samples | - | - | - | - | - | - | - | Excel - USBDayAfterActual365PPI | - |
| 65 | Samples | - | - | - | - | - | - | - | Excel - USBDayAfterActualPercentPPI | - |
| 66 | Samples | - | - | - | - | - | - | - | Excel - USB New ProductionExcel - USB New Production 200 | - |
| 67 | Samples | - | - | - | - | - | - | - | Excel - 20161007 Smith Production data extract 2 | - |
| 68 | Samples | - | - | - | - | - | - | - | Excel - US Bank report schedules data | - |
| 69 | Samples | - | - | - | - | - | - | - | Excel - Interest less than Equal and Next earlier than pay date data | - |
| 70 | Samples | - | - | - | - | - | - | - | Excel - Difference grater than $.75 | - |
| 71 | Samples | - | - | - | - | - | - | - | Excel - Difference grater than $1.00 | - |
| 72 | Samples | - | - | - | - | - | - | - | Excel - Next before paid date | - |
| 73 | Samples | - | - | - | - | - | - | - | Excel - US Bank report schedules data updated as of 10/28/2016 | - |
| 74 | Samples | - | - | - | - | - | - | - | Excel - USB-ServicedLoansWithPPI | - |
| 75 | Samples | - | - | - | - | - | - | - | Excel - Next before paid date - 2 | - |

